UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Crystal D. Kelly

    v.                                            Case No. 18-cv-662-PB
                                                Opinion No. 2019 DNH 120
Andrew Saul, Commissioner,
Social Security Administration

## I. INTRODUCTION

Crystal Kelly challenges the Social Security Administration's denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner, in turn, seeks to have the ruling affirmed. I conclude that the Administrative Law Judge ("ALJ") committed two legal errors. First, the ALJ did not adequately support his conclusion that Kelly's residual functional capacity ("RFC") allowed her to return to her past work. Second, the ALJ's failure to admit post-hearing evidence improperly affected his alternative finding that Kelly is not disabled because other jobs exist in the national economy that she could perform.

## II. BACKGROUND

### A. Kelly's History

Kelly is 39 years old. Tr. 174. She previously worked in housekeeping, the laundry, and at the front desk of a hotel. Tr. 189-90, 207. She allegedly became disabled on May 14, 2014, because of a slipped disc, a torn tendon in her left knee,

1

osteoarthritis in both knees, pain in her left elbow, and obesity. Tr. 188-89. Kelly briefly attempted to return to work after her disability onset date, but she lasted only about a week because she "couldn't keep up" with her coworkers. Tr. 50, 207. She has not worked since. Id.

    B. <u>Denial of Kelly's Applications</u>

Kelly's applications for DIB and SSI were initially denied on November 21, 2016. Tr. 103-08. She requested a hearing before an ALJ, which was held on October 3, 2017. Tr. 109-10, 37-76. On October 18, 2017, the ALJ notified Kelly of his determination that she was not disabled. Tr. 20.

The ALJ's conclusion followed from his application of the required five-step, sequential analysis. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Kelly had not engaged in any substantial gainful activity since May 15, 2014, her alleged disability onset date. Tr. 12-13. The ALJ determined at step two that Kelly was severely impaired by morbid obesity, osteoarthritis of bilateral knees, and degenerative changes to her left knee. Tr. 13 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step three, the ALJ found that Kelly's impairments did not meet or medically equal one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). Tr. 13-14.

The ALJ determined at step four that Kelly's RFC allowed her to perform light work, except that she could sit for up to six hours per day and stand and/or walk for up to four hours per day. Tr. 14. He then concluded that Kelly was not disabled because she could return to her past work as a hotel housekeeper. Tr. 17-18.

In making his RFC determination, the ALJ claimed that he had given "great weight" to the opinion of state agency consultant Dr. Jonathan Jaffe even though Dr. Jaffe had concluded that Kelly was capable of performing only sedentary work. Tr. 17, 85, 95. The ALJ did not explain the apparent discrepancy between his RFC determination and Dr. Jaffe's contrary opinion.

The ALJ alternatively determined that Kelly was not disabled at step five because jobs existed in the national economy that she could perform even if she were limited to sedentary work. Tr. 18. In reaching this conclusion, the ALJ relied on testimony from a vocational expert ("VE"), who responded to the ALJ's hypothetical questions by identifying several sedentary jobs that Kelly could perform. Tr. 19. When Kelly's attorney questioned the VE about whether a person of

Kelly's weight would require a bariatric chair[1] to perform the jobs that the VE had identified, the VE responded by stating:

> VE: Well, from my professional experience, I can't give a frequent, that's, I can't give an answer of what the, I guess, requirements would be for a chair or anything like that. So, unfortunately, I don't feel comfortable giving the best answer for that question, but a lot of jobs that I gave would be using such as a stool, but I can't give a best answer for that question, unfortunately.

Tr. 71.

Three days after the hearing ended, Kelly's attorney submitted an affidavit from VE David Meuse that attempted to address the question the first VE was unable to answer. Tr. 31. Meuse's affidavit states that a person of Kelly's weight "would be unable to perform any of the jobs proposed by the vocational witness without the accommodation of a special chair that is both large enough to fit the person and also capable of supporting that person's weight safely." Tr. 32.

The ALJ refused to consider the affidavit. Tr. 10. The only explanation he offered for his decision was that the "affidavit was not timely submitted and that the record was closed at the conclusion of the hearing." Id.

---

[1] A bariatric chair is a special oversize chair required for individuals who, because of their size, cannot use standard chairs. See Higgins v. Comm'r of Soc. Sec., 898 F.3d 793, 794 (8th Cir. 2018).

The appeals council later denied Kelly's request for review of the ALJ's decision, rendering his decision the final decision of the Commissioner.

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), I have the authority to review the pleadings submitted by the parties and the administrative record, and to enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I will uphold the decision "so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)(per curiam)(citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(citation omitted).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991). Findings are not conclusive, however, if the ALJ derived

his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)(per curiam)(citation omitted).  The ALJ may not draw "his own conclusions from the raw medical data."  See Scanlon v. Colvin, 2014 D.N.H. 058, WL 1125354 *2 (D.N.H. Mar. 20, 2014).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### IV. ANALYSIS

The ALJ based his determination that Kelly was not disabled on alternative holdings.  He first concluded that Kelly was not disabled at step four because her RFC permitted her to perform the type of light work that she had undertaken in the past.  In the alternative, he concluded that Kelly was not disabled at step five because jobs existed in the national economy that she was capable of performing even if she could only do sedentary work.  As I explain below, the ALJ's step four determination was improper because the ALJ did not adequately support his conclusion that Kelly could perform light work, and his step five determination cannot stand because the ALJ made his determination without considering Kelly's post-hearing evidence.

## A. Step Four

The ALJ found at step four that Kelly could perform light work, limited to sitting for up to six hours and standing or walking for up to four hours per workday. See Tr. 14. This conclusion is at odds with state agency consultant Dr. Jaffe's contrary conclusion that Kelly's maximum sustained work capability is sedentary work. Tr. 85, 95.

In making an RFC determination, an ALJ "must provide a clear explanation for [its] evidentiary basis and reasons for rejecting medical source opinions." Hynes v. Barnhart, 379 F. Supp. 2d 220, 224 (D.N.H. 2004). Here, the ALJ did not address Dr. Jaffe's competing RFC determination, despite finding his opinion "persuasive" and giving it "great weight." See Tr. 17. In fact, he did not explain his decision to disregard Dr. Jaffe's opinion on this point at all. Nor did he refer to any other medical evidence in the record that justifies his RFC determination. Because the ALJ failed to support his step four determination with substantial evidence, the Commissioner cannot rely on it to support a finding that Kelly is not disabled.[2]

---

[2] The Commissioner does not defend these errors, providing a single conclusory clause in protest. But an argument presented in cursory fashion is considered waived. See Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011). In any event, Putnam v. Astrue, 2011 D.N.H. 123, 2011 WL 3320518 (D.N.H. Aug. 1, 2011), the single case the Commissioner cites, is inapposite. The issue in Putnam was whether the ALJ's RFC determination was incompatible with light work, not whether, as

B. **Step Five**

I also reject the ALJ's step five determination because he improperly refused to consider Kelly's post-hearing affidavit.

As a general matter, an ALJ always has discretion to "reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence." 20 C.F.R. § 404.944. He cannot categorically refuse a request to consider evidence simply because it is submitted after the hearing has concluded. This is especially true when post-hearing evidence is offered in response to VE testimony. As Social Security Ruling 96-9p recognizes, "[w]henever a VE is used, the [claimant] has the right to receive and respond to VE evidence prior to the issuance of a decision." SSR 96-9p n.8., 1996 WL 374185, at *9 (July 2, 1996). Because such testimony often "cannot be anticipated prior to hearing," it will often have to be submitted after the hearing has been completed. McClesky v. Astrue, 606 F.3d 351, 354 (7th Cir. 2010)(citation omitted). Where such evidence is material to an issue under

---

here, the ALJ's RFC determination was inconsistent with a physician's RFC determination, whose opinion is otherwise given "great weight." Compare id. (finding that "claimant's inability to perform the full range of light work does not compel the conclusion that he is only capable of less physically demanding [] work"), with Tr. 17, 85 (determining Kelly is capable of light work despite physician's conclusion of sedentary work).

consideration, as it is here, an ALJ cannot refuse to consider it simply because it is submitted after the hearing concludes.

Here, the ALJ based his step five determination on VE testimony that jobs existed in the national economy that Kelly could perform. Because, however, the VE who testified at the hearing could not say whether the jobs at issue required a bariatric chair for someone of Kelly's weight, the ALJ was in no position to determine that those jobs were available to a person such as Kelly who required a bariatric chair. The Meuse affidavit directly addressed this issue. Thus, the ALJ was obligated to consider it before he issued his decision.

The Commissioner insists that even if the ALJ erred in excluding the affidavit, the error was harmless. Because the affidavit does not refer to Kelly specifically, he argues, she failed to show a need for a bariatric chair. The Commissioner relies on Maietta v. Berryhill, No. 2:17-cv-00054-NT, 2017 WL 4387365 (D. Me. Oct. 2, 2017), to support his position. That case is inapposite. In Maietta, the court concluded that a claimant failed to demonstrate "his asserted need for either a bariatric or larger chair." See 2017 WL 4387365, at *3. The "lack of a factual predicate" the court relied on in Maietta is supplied in this case by the VE Meuse's affidavit. Cf. id.

The Meuse affidavit states that "a person weighing 350 to 415 pounds or more would be unable to perform any of the jobs

proposed by the vocational witness without the accommodation of a special chair." Tr. 32. At the time of her hearing, Kelly weighed 419 pounds. Tr. 45. Because Kelly is plainly a member of the class of persons that require a bariatric chair according to VE Meuse, it follows as a matter of basic logic that his affidavit directly supports Kelly's claim that she requires a bariatric chair to perform the jobs on which the ALJ's step five decision is based. Therefore, his failure to consider the affidavit was not harmless.

## V. CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), I deny the Commissioner's motion to affirm (Doc. No. 10) and grant Kelly's motion for an order reversing the Commissioner's decision (Doc. No. 8). The case is remanded for further proceedings in accordance with this memorandum and order. The clerk is directed to enter judgment accordingly and close the case.

**SO ORDERED.**

/s/ Paul Barbadoro_____
Paul Barbadoro
United States District Judge

August 1, 2019

cc: Alexandra M. Jackson, Esq.
    Luis A. Pere, Esq.